**Helen WHEELER**

v.

**TRAVELERS INSURANCE COMPANY, Appellant.**

**No. 93–1667.**

United States Court of Appeals, Third Circuit.

Argued March 11, 1994.

Decided April 29, 1994.

---

Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin, Samuel J. Arena, Jr., Jane L. Foster (argued), Stradley, Ronon, Stevens & Young, Philadelphia, PA, for appellant.

Morris M. Shuster (argued), Chimicles, Burt, Jacobsen & McNew, Haverford, PA, William D. Marvin, Bensalem, PA, for appellee.

Before: GREENBERG, ROTH, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. FACTUAL AND PROCEDURAL HISTORY

#### A. Factual History

This matter is before the court on an appeal from a judgment of the district court entered on June 11, 1993. The germane facts are not in dispute. On November 16, 1982, the appellee, Helen Wheeler, was struck by an automobile.[1] She sustained injuries requiring her to incur over $25,000 in medical expenses between November 16, 1982 and June 6, 1983. During that period Wheeler was enrolled in the Medicare program, see 42 U.S.C. §§ 1395a et seq., and also was covered by a no-fault automobile insurance policy issued by the appellant, the Travelers Insurance Company. Medicare paid $21,947.15 directly to her healthcare providers on her behalf, and Travelers paid Wheeler $3,600.46 to cover the difference between the cost of her medical services and Medicare's payments.[2] Thus, Wheeler acknowledges that Medicare and Travelers fully paid the medical expenses she incurred as a result of her accident. Nevertheless, Wheeler sought recovery from Travelers for the $21,947.15 in expenses paid by Medicare. Travelers denied Wheeler's claim based on its construction of the Pennsylvania No–Fault Motor Vehicle Insurance Act.[3]

#### B. Procedural History

In 1984, Wheeler and six other plaintiffs initiated individual and class actions against six motor vehicle insurance carriers, including Travelers, and the Southeastern Pennsyl-

vania Transportation Authority, in the Court of Common Pleas of Philadelphia County, Pennsylvania.[4] Each of the plaintiffs alleged that he or she was injured in an automobile accident after December 5, 1980, and incurred medical expenses between that date and June 6, 1983, which Medicare paid, but each nevertheless sought reimbursement for these expenses under a no-fault policy pursuant to the Pennsylvania No–Fault Act. Collins v. Allstate Indem. Co., 426 Pa.Super. 197, 626 A.2d 1162, 1164 (1993). The insurers removed the cases to the United States District Court for the Eastern District of Pennsylvania, but that court remanded all the individual and class actions to the state court except for Wheeler's individual claim against Travelers. The district court then exercised diversity removal jurisdiction over Wheeler's individual claim.[5]

The district court placed Wheeler's individual claim against Travelers in suspense in deference to the common pleas actions. The state court first adjudicated the individual claims against all the defendants except Travelers, granting partial summary judgment to the plaintiffs, and holding that their no-fault policies entitled them to recover the medical costs paid by Medicare, and interest on those costs, but not attorneys' fees.

On appeal the Pennsylvania Superior Court affirmed, Collins, 626 A.2d at 1173, holding that: (1) the plaintiffs had standing based on their contractual rights and their claims for attorneys' fees and interest on the allegedly overdue no-fault benefits payments, id. at 1166–67; (2) the Pennsylvania No–Fault Act entitled the plaintiffs to recover from the insurers for medical expenses paid by Medicare because as of December 5, 1980, the effective date of the Omnibus Reconciliation Act, 42 U.S.C. § 1395y(b)(1) (ORA),

---

1. The parties submitted the matter to the district court on a stipulation of facts which indicated that Wheeler was hit while crossing a street. The stipulation did not include a further description of the location of the accident, but the parties do not suggest that the location is material.

2. Wheeler also incurred an additional $1,500 in medical expenses not covered by either Medicare or Travelers, but she is not seeking reimbursement from Travelers for these expenses.

3. Act of July 19, 1974, P.L. 489, repealed by Act of February 12, 1984, No. 84–11, § 8(a), formerly codified as, 40 Pa.Stat.Ann. §§ 1009.101 et seq. (Purdon Supp.1984).

4. SEPTA was self-insured.

5. We have no need to discuss the basis for the remand orders.

Medicare benefits became secondary to no-fault benefits, *id.* at 1167–69; (3) the Pennsylvania No–Fault Act entitled the plaintiffs to interest on the unpaid no-fault benefits, *id.* at 1170–71; and (4) the plaintiffs were not entitled to attorneys' fees. The Superior Court did not allow attorneys' fees because the insurers had not acted in "bad faith," the plaintiffs did not retain attorneys as a result of unreasonable delay by the insurers, and the insurers timely notified the plaintiffs that their claims had been denied on the theory that Medicare was the primary obligor for their losses, *id.* at 1171–73.[6] After the Superior Court decided *Collins,* Wheeler and Travelers filed a stipulation of facts and cross-motions for summary judgment in the district court, which then granted Wheeler's motion for summary judgment. *Wheeler v. Travelers Ins. Co.,* 821 F.Supp. 1100, 1102 (E.D.Pa.1993). The district court adopted the Superior Court's reasoning in *Collins,* and awarded Wheeler $21,947.15, together with interest at the annual rate of 18% from December 11, 1983. *Id.*[7] Travelers then appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. *DISCUSSION*

■ Travelers originally challenged Wheeler's standing before the district court, but did not raise the issue of standing in this appeal. This omission is understandable for, as we will explain, if a district court finds that a plaintiff in a removed case does not have standing, it will remand the case to the state court. In view of *Collins,* we believe that Travelers does not find that possibility very attractive. Of course, Wheeler contends that she has standing. But the agreement of the parties that Wheeler has standing does not foreclose our examination of this issue as we have an independent obligation to consider jurisdictional issues, *see Elkin v. Fauver,* 969 F.2d 48, 52 n. 1 (3d. Cir.), *cert.*

denied, —— U.S. ——, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992), and "the doctrine of standing … goes to the subject matter jurisdiction of the district court and the validity of its judgment *ab initio.*" *Page v. Schweiker,* 786 F.2d 150, 153, (3d Cir.1986). Thus, standing is a "threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

■ Although this appeal is in a diversity case which was removed to federal district court, we apply federal law in determining Wheeler's standing because, "[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985). To achieve standing, a plaintiff must satisfy both the case and controversy requirements of Article III of the Constitution and certain prudential requirements. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979); *see Chem Serv., Inc. v. Environmental Monitoring Sys.,* 12 F.3d 1256, 1262 (3d Cir.1993); *Sullivan v. Syracuse Housing Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992).

■ "In order to satisfy Art. III, the plaintiff must show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone,* 441 U.S. at 99, 99 S.Ct. at 1607–08. The injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38–40, 96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450 (1976). These requirements ensure that plaintiffs have a "personal stake" or "interest" in the outcome of the proceedings, *id.* at 38–39, 96 S.Ct. at 1924–25, "sufficient to warrant …

---

**6.** The common pleas court held that the federal government did not have the right to subrogate to the plaintiffs' claims for the interest awarded, but the Superior Court did not reach that issue, as it was not properly before it. *Collins,* 626 A.2d at 1170–71. The insurers have filed a petition for allocatur, which we understand is pending before the Pennsylvania Supreme Court.

**7.** Although Wheeler initially sought attorneys' fees, she did not assert this claim in the district court. *Wheeler,* 821 F.Supp. at 1101 n. 2. Accordingly, we are not concerned with attorneys' fees.

**538**

[their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf," *Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2205.[8]

■ Prudential considerations further limit a plaintiff's ability to establish that she has standing. These considerations require that: (1) a litigant "assert his [or her] own legal interests rather than those of third parties," *Phillips Petroleum,* 472 U.S. at 804, 105 S.Ct. at 2970; (2) courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,'" *Sullivan,* 962 F.2d at 1106 (quoting *Warth,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06); and (3) a litigant demonstrate that her interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based, *Valley Forge Christian College v. Americans United Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (quoting *Association of Data Processing Service Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). The federal courts have adopted prudential limits on standing in order

> 'to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim.'

*Phillips Petroleum,* 472 U.S. at 804, 105 S.Ct. at 2970 (quoting *Gladstone,* 441 U.S. at 99–100, 99 S.Ct. at 1607–08).

■ We conclude that Wheeler does not have constitutional standing. She has not alleged or established that she suffered any actual or threatened injury from Travelers' denial of her claim for no-fault benefits for she acknowledges that Medicare paid the medical expenses for which she seeks a recovery. In essence, she therefore pleads that Travelers wronged, but did not injure her. Moreover, she concedes that she "will be obliged to remit any payment she now receives from Travelers to Medicare pursuant to 42 U.S.C. § 1395y(b)(1) [ (1982) ]." *See* Brief at 7. Thus, Wheeler never has had anything to gain from this lawsuit.[9] Therefore, she does not have standing for, as the Supreme Court stated in *Simon,* "[t]he necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement. A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies." *Simon,* 426 U.S. at 39, 96 S.Ct. at 1925.[10]

■ Even if Wheeler had Article III standing, she surely does not have prudential standing. Clearly she is not the litigant "best suited to assert" the complex claims that ORA made Medicare benefits secondary to no-fault benefits as of December 5, 1980, and that from that date forward the no-fault insurers could not deduct Medicare benefits from the benefits otherwise due under no-fault policies. *See Phillips Petroleum,* 472 U.S. at 804, 105 S.Ct. at 2970. Inasmuch as Medicare is entitled to receive any no-fault

---

8. The personal stake requirement ensures that courts will only decide disputes 'presented in an adversary context and in a form historically viewed as capable of judicial resolution.' ... Additionally, the requirement follows from the often-repeated rule that under the case or controversy requirement, 'federal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them.'
*Rosetti v. Shalala,* 12 F.3d 1216, 1224 (3d Cir. 1993) (internal citations omitted).

9. In the circumstances presented in this case, we will not follow the Pennsylvania Superior Court's conclusion that a plaintiff seeking to enforce a contract demonstrates a sufficient basis for standing. *Collins,* 626 A.2d at 1166. However, we acknowledge that there is no federal impediment to the state courts developing more easily satisfied standing rules than those followed in the federal courts.

We also will not follow the Superior Court's holding that a plaintiff's claims for interest on overdue benefits and attorneys' fees give her a direct and sufficient pecuniary interest in an action. *Collins,* 626 A.2d at 1166–67. Such claims are derivative of the primary claim for no-fault benefits, and thus constitute an insufficient basis for standing.

10. We do not deal in this case with a plaintiff who has not been injured but nevertheless asserts that she has standing because she is entitled to seek a recovery over and above her actual losses.

benefits that Travelers owes Wheeler, and Congress intended ORA to benefit the government by reducing Medicare expenditures, the government is the party "best suited to assert" this claim. The United States has not assigned its claim to Wheeler. Thus, Wheeler fails to satisfy the prudential requirements for standing because she improperly is seeking to vindicate the rights of a third-party, the United States. *See Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir.1991) ("The longstanding basic rule of third party standing is that 'in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.' ") (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991)); *Rocks v. City of Philadelphia*, 868 F.2d 644, 648–49 (3d Cir.1989).[11]

We recognize that frequently plaintiffs bring actions which may benefit third parties. A prime example is when an injured employee who has received worker's compensation benefits brings a third-party action against an alleged tortfeasor. In that situation the worker's compensation insurance carrier may be able to assert a lien on the proceeds of a recovery in the third-party action.[12] But such cases are distinguishable from this case. In the third-party action the focus of the case is on the dispute between the employee and the alleged tortfeasor. The claim of the insurer asserting the lien is tangential to the

matters at issue in the third-party action, *e.g.*, negligence of the defendant and damages suffered by the plaintiff. Furthermore, in the typical third-party action the employee will assert losses over and above the worker's compensation payments and thus will have a personal incentive to litigate.

But this case is different for there is no real controversy between Travelers and Wheeler. Thus, Travelers does not assert that under the terms of Wheeler's insurance policy if Wheeler had not been entitled to Medicare payments, it would not have been liable for the bills Medicare paid. Accordingly, in this case, the dispute realistically is between Medicare and Travelers and not between Wheeler and Travelers. Indeed, the oral argument before us centered on a discussion of the intricacies of the Medicare regulations. This focus is understandable as Wheeler's brief contains no argument with respect to her right to recover on Travelers' policy, exclusive of the situation created by the circumstance that Medicare paid her bills. Overall, it is obvious that the wrong party has been contending that Travelers is liable for the bills paid by Medicare.[13]

We make one final point. The district courts are coping with large volumes of litigation, and parties with real losses frequently are delayed in obtaining adjudications on the merits. The mission of the federal courts best can be fulfilled if the courts recognize and enforce the constitutional and prudential

---

**11.** We have applied a balancing test to determine whether a litigant has prudential standing to bring an action on behalf of a third party. Three of the factors we have considered are potential conflicts of interest between the litigant and the third party, obstacles to suit by the third party, and the closeness of the relationship between the litigant and the third party. *Amato*, 952 F.2d at 749–53. Moreover, we have held that "third party standing is exceptional" and that a litigant seeking to bring an action on behalf of a third party bears the burden of establishing that it has third party standing. *Id.* at 750. The fact that the government chose not to bring an action against Travelers for recovery of Wheeler's no-fault benefits and that such an action probably is now time-barred is irrelevant to our analysis of Wheeler's prudential standing because the government "faced no affirmative obstacle to suing," and seems to have had sufficient "practical incentive to sue." *Id.* at 751. Furthermore, even if the government could never have brought such an action, the result of our decision would be the

same because Wheeler does not have Article III standing and an inquiry into whether the government could bring such an action could only be material with respect to Wheeler's prudential standing.

**12.** Thus, a plaintiff does not lose standing merely because there is a lien on his recovery. *See Passman v. Companhia de Navegacao Maritima Netumar*, 544 F.Supp. 451 (E.D.Pa.1982), *aff'd*, 725 F.2d 669 (3d Cir.1983).

**13.** We realize that frequently in litigation between private parties in which the plaintiff's standing is clear, the rights of the parties are dependent upon the meaning of statutes and regulations but in those cases the plaintiff is relying on the statutes and regulations for his or her own benefit. It is one thing for a plaintiff to assert his or her own rights; it is quite another for the plaintiff to assert the government's rights.

limitations on the exercise of their jurisdiction. That way the courts will have time to devote to claims by parties who actually have been injured and may be entitled to relief on their own behalf.

■ Our conclusion does not require us to dismiss the case, for a determination that there is no standing "does not extinguish a removed state court case." *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745, 751 (3d Cir.1993). Rather, federal law "only requires ... [us] to remand [Wheeler's case] to state court." *Id.* (citing 28 U.S.C. § 1447(c)). Accordingly, we will direct that the case be remanded to the state court.

### III. *CONCLUSION*

We will vacate the judgment of June 11, 1993, and will remand the matter to the district court so that it may in turn remand the case to the common pleas court.