TRAXLER, Circuit Judge, dissenting:
 

 In
 
 Spokeo, Inc. v. Robins
 
 , --- U.S. ----,
 
 136 S.Ct. 1540
 
 , 1547,
 
 194 L.Ed.2d 635
 
 (2016), the Supreme Court held that even when a statute purports to give a plaintiff the right to sue for damages, the plaintiff must demonstrate that
 
 it was actually harmed by the conduct it challenges
 
 in order to establish Article III standing to sue on its own behalf. Because the Estate's complaint does not allege it was harmed by the failure of the Greater Baltimore Medical Center (hereinafter, "the Hospital") to pay for Bromwell's medical care or to reimburse the government for its payment,
 
 Spokeo
 
 plainly requires our holding that the Estate has not established standing to sue. I believe the majority errs in holding to the contrary.
 

 I also believe there is error in the alternative holding that the Estate actually was not required to establish standing in its own right because Congress effected a
 
 partial assignment
 
 of the government's right of action to Medicare beneficiaries when it created a private right of action in the Medicare Secondary Payment Act ("MSP Act"). All six circuits to address the issue have held, for persuasive reasons, that Congress did
 
 not
 
 intend to partially assign its Medicare damages claim to private plaintiffs and that private plaintiffs must therefore establish standing on their own behalf in order to bring private actions under the MSP Act. The sound reasoning these courts have employed applies
 just as well to Medicare beneficiaries as it does to other private plaintiffs. Nevertheless, without even discussing these reasons-or undertaking any significant statutory analysis whatsoever-the majority simply concludes ipse dixit that Congress
 
 did
 
 make a partial assignment of its own damages claim to Medicare beneficiaries. I agree with the other six circuits that have addressed this issue that the creation of the MSP Act's private right of action did not constitute a partial assignment of the government's damages claim to private plaintiffs.
 

 I.
 

 Enacted in 1980, the MSP Act makes Medicare insurance secondarily responsible for expenses covered by group health insurance, a workmen's compensation plan, or under an automobile, liability, or no fault insurance policy.
 
 See
 
 42 U.S.C. § 1395y(b)(2). However, Medicare may pay up front for such expenses when the primary plan has not paid promptly or cannot reasonably be expected to do so.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B)(i). If Medicare makes such conditional payments, the plan responsible for primary payment is required to reimburse Medicare.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B)(ii). A Medicare beneficiary also must reimburse Medicare if (and only if) the beneficiary receives payment from the primary plan.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B)(ii).
 

 As originally enacted, the MSP Act entitled the government to sue any entity that was primarily responsible for paying the expenses and collect double statutory damages.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B)(iii). In 1986, Congress added a private right of action entitling a private party to those same double damages from a primary plan that "fails to provide for primary payment (or appropriate reimbursement)." Pub. L. No. 99-509, § 9319,
 
 100 Stat. 1874
 
 (1986) (codified as amended at 42 U.S.C. § 1395y(b)(3)(A) ).
 

 In this case, the Estate brought such a private cause of action against the Hospital on November 21, 2016. The facts alleged in its complaint that relate to standing were quite simple: Medicare made conditional payments of $157,730.75 to the Hospital for Bromwell's medical care and treatment; the Estate then brought a medical malpractice lawsuit against the Hospital and ultimately obtained a judgment against the Hospital for $389,014.30 on October 31, 2016, establishing the Hospital's liability for the conditional payments previously made by Medicare; but even after receiving written notification that Medicare had made the conditional payments, the Hospital (in the three weeks since the final judgment was obtained) had "failed to provide primary payment or reimbursement of any of the medical expenses conditionally paid by the federal Medicare program."
 
 [1]
 
 J.A. 8. The Estate, in its Prayer for Relief, sought judgment against the Hospital in the amount of $315,461.50 "being 'an amount double' the amount due to the federal Medicare program," plus attorneys' fees, interest, and costs. J.A. 13.
 

 In the district court, the Hospital moved to dismiss the Estate's claim for lack of federal jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment under Rule 56. In support of a facial challenge under Rule 12(b)(1), the Hospital argued that the Estate's complaint did not establish standing to bring this action because the Estate
 had not alleged any harm from the Hospital's purported failure to reimburse Medicare.
 
 [2]
 
 In this regard, the Hospital specifically noted that "[t]he Estate does not allege it made conditional payments on Medicare's behalf, nor has Medicare sought reimbursement of the conditional payments from the Estate." J.A. 37. Alternatively, the Hospital contended it was entitled to summary judgment because the Hospital had not "failed" to reimburse Medicare since it had promptly paid the judgment on December 7, 2016.
 

 The Estate opposed the motion. Regarding standing, the Estate argued that Congress intended to provide a private cause of action to beneficiaries when Medicare had paid for their care conditionally and a liable primary payer had not paid. Alternatively, the Estate argued that it
 
 had
 
 suffered a concrete injury insofar as the Hospital had not paid any portion of the tort judgment at the time suit was filed. The Estate also maintained, regarding the merits, that payment was untimely and that, in any event, payment to the Estate could not satisfy the Hospital's obligation to reimburse Medicare.
 
 See
 

 Humana Med. Plan v. Western Heritage Ins. Co.
 
 ,
 
 832 F.3d 1229
 
 , 1239-40 (11th Cir. 2016) (holding that payment from primary plan into trust pending dispute between primary plan and Medicare beneficiary did not extinguish primary plan's duty to reimburse Medicare).
 

 The district court did not address the jurisdictional question of whether the Estate lacked standing to bring its claim. Rather, it adjudicated the suit on its merits, granting summary judgment to the Hospital on the basis that the Hospital did not "fail" to reimburse the government, within the meaning of the statute.
 

 II.
 

 The Estate now appeals, arguing that the district court erred in granting summary judgment against it. The Hospital, although it prevailed on the merits below, continues to argue primarily that the district court erred in failing to dismiss the case for lack of standing and in failing to recognize that it had no jurisdiction to address the merits of the Estate's claim. In my view the Hospital is correct.
 

 A.
 

 Article III gives federal courts jurisdiction only over "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so."
 
 Hollingsworth v. Perry
 
 ,
 
 570 U.S. 693
 
 , 704,
 
 133 S.Ct. 2652
 
 ,
 
 186 L.Ed.2d 768
 
 (2013). In the absence of standing, a district court "has no power to adjudicate and dispose of a claim on the merits."
 
 Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC
 
 ,
 
 713 F.3d 175
 
 , 185 (4th Cir. 2013).
 

 To survive a facial challenge to standing-meaning one that does not dispute the facts alleged-"the plaintiff must clearly allege facts demonstrating each element" of standing.
 
 Spokeo
 
 ,
 
 136 S.Ct. at 1547
 
 (alteration and internal quotation marks omitted);
 
 see
 

 Kenny v. Wilson
 
 ,
 
 885 F.3d 280
 
 , 287 (4th Cir. 2018) ;
 
 see also
 

 Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.
 
 ,
 
 528 U.S. 167
 
 , 180,
 
 120 S.Ct. 693
 
 ,
 
 145 L.Ed.2d 610
 
 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing
 
 at the outset of the litigation
 
 ." (emphasis added) ).
 

 To do so, a plaintiff must allege "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."
 
 Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.
 
 ,
 
 454 U.S. 464
 
 , 472,
 
 102 S.Ct. 752
 
 ,
 
 70 L.Ed.2d 700
 
 (1982) (citation and internal quotation marks omitted). To support standing, injury caused by the challenged standing must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."
 
 Lujan v. Defenders of Wildlife
 
 ,
 
 504 U.S. 555
 
 , 560,
 
 112 S.Ct. 2130
 
 ,
 
 119 L.Ed.2d 351
 
 (1992) (internal quotation marks omitted).
 

 Critically, the Supreme Court recently clarified the meaning of "concrete and particularized" in the standing context, noting that "concrete" and "particularized" are separate requirements that both must be satisfied for standing to be established.
 
 See
 

 Spokeo
 
 ,
 
 136 S.Ct. at 1548
 
 . The Court further explained that for an injury to be concrete, "it must actually exist"; in other words, it must be "real, and not abstract."
 

 Id.
 

 (internal quotation marks omitted). Indeed, the Court made clear that absent an actual or threatened injury of that type, a plaintiff cannot establish standing,
 
 even when a statute purports to give it the right to sue for damages
 
 .
 
 See
 

 id.
 

 at 1550
 
 (holding that plaintiff had established standing to bring suit for damages under the Fair Credit Reporting Act of 1970 (FCRA) only if he had alleged an injury that was concrete);
 
 see also
 

 Dreher v. Experian Info. Sols., Inc.
 
 ,
 
 856 F.3d 337
 
 , 346 (4th Cir. 2017) (holding plaintiff failed to establish standing in FCRA action for damages when he showed only "a statutory violation divorced from any real world effect"). Because the lower court in
 
 Spokeo
 
 had failed to appreciate the distinction between the "particularized" and "concrete" requirements, the Court remanded for further consideration of the standing issue.
 
 See
 

 Spokeo
 
 ,
 
 136 S.Ct. at 1550
 
 .
 

 Application of these principles in this case demonstrates that the Estate failed to establish standing. I will explain why I believe that to be the case and then I will briefly discuss the majority's contrary analysis.
 

 B.
 

 There is no doubt of course that the
 
 government
 
 would have standing to seek reimbursement of the money it paid for Bromwell's medical care. As the Estate concedes, however, and as every circuit to address the question has held, an action under § 1395y(b)(3)(A) is not a
 
 qui tam
 
 action; a private plaintiff suing under that MSP Act sues only on its own behalf, not on behalf of the government.
 
 See
 

 In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.
 
 ,
 
 685 F.3d 353
 
 , 359 n.9 (3d Cir. 2012) (collecting cases). Accordingly, the private plaintiff must establish standing in its own right in order to proceed under that statute.
 
 See
 

 Stalley v. Catholic Health Initiatives
 
 ,
 
 509 F.3d 517
 
 , 519, 521-27 (8th Cir. 2007).
 

 To determine whether the Estate itself has alleged standing, it goes without saying that we must first identify the putatively illegal conduct that the complaint challenges. Here, the alleged illegal conduct-and the statutory basis for the claim for double damages-was the Hospital's failure either to "provide primary payment ... of any of the medical expenses conditionally paid by the federal Medicare program" or to "reimburse[ ]" the government for those conditional payments. J.A. 8. But the complaint here did not allege that the Hospital's failure-to that point-to make primary payment for the treatment or reimburse
 the government harmed the Estate
 
 in any way
 
 .
 

 The Hospital's failure to pay for Bromwell's treatment did not harm the Estate initially because in the absence of another payer, the government paid for her care. Since the Estate had no obligation to reimburse the government so long as the Hospital did not pay the Estate, the Estate was not injured by the Hospital's not having paid.
 
 Cf.
 

 Wheeler v. Travelers Ins. Co.
 
 ,
 
 22 F.3d 534
 
 , 538 (3d Cir. 1994) (holding that since Medicare had paid her medical expenses, plaintiff had not established any injury that would support standing in suit against primary insurer under state insurance laws).
 

 Nor does the complaint allege that the Estate would have benefited had the Hospital paid the Estate the amount of the government's conditional payments. After all, any "entity that receives payment from a primary plan" that has been demonstrated to be responsible for making that payment is obligated to reimburse the government for the conditional payments the government made. 42 U.S.C. § 1395y(b)(2)(B)(ii) ;
 
 see
 

 42 C.F.R. § 411.24
 
 (h) (providing that a beneficiary who receives a primary payment "must reimburse Medicare within 60 days"). The complaint does not allege that the Estate was excused from that obligation here.
 
 [3]
 

 C.
 

 The majority holds for two reasons that the complaint established standing: the majority contends first that the Estate alleged an injury to its own interests, and second, that the Estate was authorized to sue to remedy the government's injury.
 

 1.
 

 Regarding its first point, the majority makes little or no attempt to explain how the Hospital's failure to make primary payment or reimburse the government for its payment had any effect on the Estate that was "real, and not abstract."
 
 Spokeo
 
 ,
 
 136 S.Ct. at 1548
 
 (internal quotation marks omitted). Rather, the majority simply
 
 states
 
 that the "
 
 monetary liability
 
 [established in the Estate's tort judgment against the Hospital] was [the Estate's] injury under the federal statute." Maj. Op. at 526 (emphasis added). But a tort judgment in one's favor is not an injury. In fact, any harm to the Estate from the Hospital's failure to pay for Bromwell's care was negated
 
 before the Estate ever obtained the tort judgment
 
 , when the government stepped in and paid for the treatment, leaving the Estate with no obligation other than to turn over any subsequent payment made by a primary plan to the Estate.
 

 In lieu of explaining how the Estate could have been harmed by the Hospital's failure to pay when the government stepped in to pay for Bromwell's treatment, the majority points to a hypothetical that it asserts is analogous to the facts the Estate alleges: "If Plaintiff Pam borrows something from Lender Lisa, and Defendant Dan steals it, Pam obviously has standing to recover from Dan." Maj. Op. at 526. However, far from supporting the conclusion that the Estate alleged any injury from the Hospital's nonpayment, the
 majority's analogy simply highlights what appears to me to be a gap in the analysis. To the extent the theft in the majority's hypothetical actually harmed Pam,
 
 it is because it left her obligated to replace the thing she borrowed
 
 . But the absence, at the outset of this case, of a comparable obligation on the Estate to reimburse the government is the very reason the Estate alleged no harm here. When it paid for her care, the government prevented harm to Bromwell and the Estate, and neither the majority's hypothetical or its other analysis accounts for that.
 

 2.
 

 As for the alternative holding that a Medicare beneficiary has standing to bring a private action to remedy an injury
 
 to the government
 
 ,
 
 see
 
 Maj. Op. at 526- ("Netro also properly invoked a derivative injury: the government's recoupment interest assigned to a Medicare beneficiary by the MSP Act."), I would simply note that all six of the circuit courts of appeal to address the issue have concluded that a plaintiff suing under the statute sues only to remedy his own injury, not the government's.
 
 See
 

 In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.
 
 ,
 
 685 F.3d at
 
 359 n.9 (collecting cases). In determining that Congress did not intend to partially assign its own damages claim to private plaintiffs, those courts have relied on factors such as the fact that (1) the language of the statute "purports to give a substantive right to individuals
 
 qua
 
 individuals, not as private attorneys general or assignees of a public right,"
 
 Catholic Health Initiatives
 
 ,
 
 509 F.3d at
 
 522 ;
 
 see
 

 Woods v. Empire Health Choice, Inc.
 
 ,
 
 574 F.3d 92
 
 , 98-99 (2d Cir. 2009) ;
 
 Stalley v. Methodist Healthcare
 
 ,
 
 517 F.3d 911
 
 , 918 (6th Cir. 2008) ; (2) "the MSP [Act] does not indicate that a private party will necessarily share any recovery with the Government,"
 
 Woods
 
 ,
 
 574 F.3d at
 
 99 ;
 
 see
 

 Methodist Healthcare
 
 ,
 
 517 F.3d at
 
 918-19 ; and (3) the statute "lacks any provisions giving the government the right to control the action."
 
 Catholic Health Initiatives
 
 ,
 
 509 F.3d at
 
 522 ;
 
 see
 

 Woods
 
 ,
 
 574 F.3d at
 
 99-100 ;
 
 see
 

 Methodist Healthcare
 
 ,
 
 517 F.3d at 918
 
 . It has been noted as well that Congress did not have a compelling incentive to make a partial assignment of the government's damages claim to Medicare beneficiaries because Congress likely expected in 1986 that Medicare beneficiaries would be able to establish standing to bring suit against their primary payers to remedy their own interests, even after Medicare has made conditional payment.
 
 See
 

 Catholic Health Initiatives
 
 ,
 
 509 F.3d at 526-27
 
 . I would interpret the statute in just this way for all of these reasons, and I have not seen any reason to call this analysis into question.
 
 [4]
 

 The majority correctly points out that none of the cases in which the courts held that the creation of the private right of action was not a private assignment were cases "brought by the Medicare beneficiary on whose behalf Medicare made conditional payments." Maj. Op. at 527. But I can see no plausible argument for the suggestion that Congress intended to partially assign its damages claim to certain private
 plaintiffs but not to others, and I see no basis for any such conclusion.
 

 In support of its view that Medicare beneficiaries need not establish standing in their own right, my friends in the majority note that several courts of appeal have assumed or appeared to assume (pre-
 
 Spokeo
 
 ) that Medicare beneficiaries would automatically have standing to bring private actions to remedy the government's injury.
 
 See
 
 Maj. Op. at 527-28. But those courts' assumptions were plainly not based on the belief that the statute effectively assigned part of the government's interest to Medicare beneficiaries. Rather, they were based on the (pre-
 
 Spokeo
 
 ) view that although Congress made no such assignment, Medicare beneficiaries can establish standing to sue on their own behalf.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 Catholic Health Initiatives
 
 ,
 
 509 F.3d at 522
 
 (explaining that the MSP Act "purports to give a substantive right to individuals
 
 qua
 
 individuals, not as private attorneys general or assignees of a public right").
 
 [5]
 
 In light of that fact, it is hardly surprising that the only circuit to address facts similar to ours post-
 
 Spokeo
 
 held that a Medicare-beneficiary plaintiff failed to establish standing when he did not allege he suffered any injury himself.
 
 See
 

 Gucwa v. Lawley
 
 ,
 
 731 Fed.Appx. 408
 
 , 413,
 
 2018 WL 1791994
 
 , at *4 (6th Cir. Apr. 16, 2018) (unpublished).
 

 I recognize that Congress's belief that Medicare beneficiaries would be able to prove standing in their own right may have contributed to Congress's decision not to partially assign the government's right of action to private plaintiffs. And Congress may wish to revisit its decision in light of
 
 Spokeo
 
 . But we have no authority ourselves to make a partial assignment to private plaintiffs that Congress never intended to make. Rather, we must apply current standing law to the statute that Congress actually enacted.
 

 III.
 

 In sum, the Estate failed to meet its burden of alleging that the Estate suffered real-world harm from the Hospital's failure to pay for Bromwell's care. In the absence of any allegation of actual harm to the plaintiff,
 
 Spokeo
 
 plainly dictates that the Estate lacks standing and the district court lacked jurisdiction to adjudicate the merits of its claim. For these reasons, I respectfully dissent from the majority's decision to affirm the district court's judgment for the Hospital on the merits. I would vacate the judgment and remand for dismissal of the complaint under Rule 12(b)(1) for lack of standing.
 

 The complaint alleged that the Hospital is a "primary plan" within the meaning of MSP Act because it carries a policy of liability insurance, including a self-insured plan, that provides coverage for damages incurred as a result of the Hospital's negligence.
 

 Indeed, it is uncontested that on December 7, 2016, after the institution of this suit, the Hospital paid the Estate the entire amount of the judgment, which included the amount owed to Medicare.
 

 For the first time, at oral argument, the Estate contended that had the Hospital paid the Estate or reimbursed the government, the Estate would have been entitled to be reimbursed for procurement costs under
 
 42 C.F.R. § 411.37
 
 for prosecuting the tort suit against the Hospital. However, because the complaint did not allege that the Estate bore any costs that it would be entitled to be reimbursed for under the regulation, the Estate did not establish standing on that basis.
 

 My friends in the majority suggest that interpreting the MSP Act only to create a private right of action as opposed to a partial assignment of the government's damages claim means that Congress passed a meaningless provision "just for the heck of it." Maj. Op. at 527. But that is plainly incorrect. No one doubts that Congress anticipated that by creating a private right of action, it would enable plaintiffs to recover damages under the statute. I simply believe that Congress's understanding that plaintiffs such as the Estate could prove an injury sufficiently concrete for standing purposes is not viable after
 
 Spokeo
 
 .
 

 These pre-
 
 Spokeo
 
 assumptions about whether Medicare beneficiaries can automatically establish standing of course are of little relevance to us now.