WILKINSON, Circuit Judge:
 

 Kathy Netro brought a medical malpractice suit in state court against the Greater Baltimore Medical Center for its negligent care of her now-deceased mother. When she won, GBMC became liable under federal law for payments Medicare had made for Netro's mother's treatment. GBMC did not immediately satisfy the judgment. And three weeks after the state court entered its final order, Netro brought this suit to recover solely the funds owed to Medicare and to collect for herself under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, which authorizes a private cause of action for double damages where a recalcitrant payer "fails" to reimburse Medicare. But before the litigation went very far, GBMC paid Netro the state court judgment, which included the full amount owed to Medicare. This series of events brings us to the straightforward question in this case: Did GBMC "fail" to pay the funds owed to Medicare? The district court said no, and we agree.
 

 I.
 

 A.
 

 In 1980, Congress enacted the Medicare Secondary Payer Act to address ballooning medical entitlement costs. Before the legislation went into effect, Medicare would pay for all medical treatment within its ambit, even if a private party such as an insurer was also responsible. The MSP Act "inverted that system" and made Medicare "an entitlement of last resort, available only if no private [party] was liable."
 
 Humana Med. Plan, Inc. v. W. Heritage Ins. Co.
 
 ,
 
 832 F.3d 1229
 
 , 1234 (11th Cir. 2016).
 

 Congress designed this new arrangement with an important caveat. Where a private party responsible for medical costs does not or cannot promptly meet its obligations, Medicare may pay up front, so long as the responsible party eventually reimburses the government.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B). Congress later added two tools to ensure that so-called "primary plans" would compensate Medicare for these "conditional payments": a direct government action against the responsible party, and a private enforcement provision.
 

 42 U.S.C. § 1395y(b)(3)(A) provides that "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)...." Legislative history is scant, but "[c]ourts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers."
 
 Stalley v. Catholic Health Initiatives
 
 ,
 
 509 F.3d 517
 
 , 524 (8th Cir. 2007) (collecting authorities).
 

 The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.
 

 Id
 
 . at 524-25.
 

 B.
 

 In June 2011, GBMC performed hip replacement surgery on Barbara Bromwell.
 

 After the surgery, she suffered complications that resulted in partial paralysis. Bromwell died two years later. Her daughter, Kathy Netro, was named personal representative of Bromwell's estate.
 

 Netro filed a medical malpractice suit against GBMC in Maryland state court. After a trial on the merits, a jury found GBMC liable for $451,956 in damages on July 22, 2016. That figure included compensation for $157,730.75 in "conditional payments" made by Medicare for Bromwell's treatment. Netro was obligated to pass along that portion of the state court judgment to Medicare.
 

 Shortly after the jury verdict, GBMC filed a post-trial motion seeking to reduce the amount of the initial judgment to more accurately reflect the medical expenses actually paid, rather than the amount billed, for Bromwell's care. While the state court considered the motion, GBMC began making arrangements to pay Netro. It requested a Tax Identification Number for Bromwell's estate, but the parties disagreed about whether that information was necessary to make the payment. The state court granted GBMC's motion and entered a final judgment of $389,014.30 on October 31, 2016.
 

 Just three weeks later, on November 21, Netro brought this suit in the United States District Court for the District of Maryland. Alleging that GBMC refused to pay the state court judgment, Netro invoked the private cause of action laid out in the MSP Act.
 

 Sixteen days after Netro filed the federal suit, GBMC paid her $403,722.24, which represented the amended final judgment amount plus post-judgment interest. GBMC then filed a motion arguing that the district court should dismiss Netro's suit for lack of standing, or, in the alternative, grant GBMC summary judgment because it did not "fail" to provide reimbursement for Medicare.
 

 Without addressing the standing argument, the district court granted GBMC's motion for summary judgment on the merits.
 
 See
 

 Netro v. Greater Baltimore Med. Ctr. Inc.
 
 , No. CV GLR-16-3769,
 
 2017 WL 5635446
 
 , at *4 (D. Md. Apr. 13, 2017). It reasoned that the statute did not require GBMC to pay Netro or reimburse Medicare immediately after the state court's final judgment, and that GBMC's December 7 payment had satisfied its obligations under the MSP Act.
 

 This appeal followed. We "review legal questions regarding standing de novo."
 
 David v. Alphin
 
 ,
 
 704 F.3d 327
 
 , 333 (4th Cir. 2013). We also "review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party."
 
 Heyer v. U.S. Bureau of Prisons
 
 ,
 
 849 F.3d 202
 
 , 208-09 (4th Cir. 2017).
 

 II.
 

 We first consider whether Netro had Article III standing to bring this suit. "A plaintiff invoking federal jurisdiction bears the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision."
 
 Spokeo, Inc. v. Robins
 
 , --- U.S. ----,
 
 136 S.Ct. 1540
 
 , 1543-44,
 
 194 L.Ed.2d 635
 
 (2016). GBMC argues that Netro lacked standing because the money she sought to recover was owed to the government, and not to her. In other words, GBMC contends Netro was not injured.
 

 A.
 

 We believe, to the contrary, that Netro suffered a personal injury in fact.
 

 Under the MSP Act, GBMC became responsible for the costs of Bromwell's medical care when the state court adjudged it liable for medical malpractice. Under the terms of the state court judgment, the money owed to Bromwell's estate included the funds ultimately due to Medicare. This monetary liability was Netro's injury under the federal statute. That Netro was legally obligated to pass along the money to Medicare cannot erase the fact that GBMC owed it to her.
 
 See
 
 42 U.S.C. 1395y(b)(2)(B)(ii) ("A primary plan's responsibility for such payment may be demonstrated by a judgment....").
 

 Step back for a moment from the complex world of Medicare payments, and imagine more mundane litigation: If Plaintiff Pam borrows something from Lender Lisa, and Defendant Dan steals it, Pam obviously has standing to recover from Dan. Her injury is not erased by the fact that the recovery will ultimately end up in Lisa's hands. The same logic applies here. Medicare paid for treatment that Bromwell received. It later became apparent that GBMC was responsible for those payments, and a state court ordered it to pay Netro. Her independent legal obligation to pass along those funds to Medicare does not defeat her standing.
 

 GBMC objects that it
 
 did
 
 pay Netro, satisfying her claim and leaving her uninjured. But standing is established by the facts alleged in the complaint.
 
 See
 

 Haro v.Sebelius
 
 ,
 
 747 F.3d 1099
 
 , 1108 (9th Cir. 2014) ("We consider whether the elements of Article III standing ... were satisfied at the time the complaint was filed."). At the time the complaint was filed, GBMC had not yet paid Netro and her injury was intact. And while it is true that GBMC's prompt payment is relevant to resolving the merits of this case,
 
 see
 

 infra
 
 Part III, it cannot be said that it mooted the case. The MSP Act authorizes double recovery. To hold that any defendant can moot an enforcement action by writing a check as soon as a complaint is filed would dismantle the statute. No plaintiff would have any incentive to bring suit in the first place, and the government's ability to recoup conditional payments would be hobbled.
 

 In the end we are left with a simple question: Is a plaintiff injured when a defendant was obligated under law to pay for her medical care but didn't? The sound answer is yes.
 

 B.
 

 Netro also properly invoked a derivative injury: the government's recoupment interest assigned to a Medicare beneficiary by the MSP Act.
 

 The Supreme Court has explained that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor," and that the federal government may partially assign its claims by statute.
 
 Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens
 
 ,
 
 529 U.S. 765
 
 , 773,
 
 120 S.Ct. 1858
 
 ,
 
 146 L.Ed.2d 836
 
 (2000) (holding that private relators have standing to recover government funds under the False Claims Act). Without this kind of partial assignment, parties invoking qui tam statutes such as the False Claims Act would lack Article III standing, rendering a dead letter the oldest and most well-established private enforcement provisions in Anglo-American law.
 

 Just as in
 
 Stevens
 
 , the government's injury in this case "is beyond doubt."
 
 Id
 
 . at 771,
 
 120 S.Ct. 1858
 
 . GBMC owed Medicare $157,730.75. And just as in
 
 Stevens
 
 , the plaintiff "has a concrete private interest in the outcome of the suit"-the amount Netro
 would receive if she prevailed.
 
 Id
 
 . at 772,
 
 120 S.Ct. 1858
 
 . When combined with Congress's intent to authorize Medicare beneficiaries to collect funds paid by Medicare on their behalf, it is clear that the MSP Act "can reasonably be regarded as effecting a partial assignment of the Government's damages claim."
 
 Id
 
 . at 773,
 
 120 S.Ct. 1858
 
 . Qui tam or not, partial assignment of government claims fits into a long tradition of courts entertaining suits by assignees and subrogees.
 
 See
 

 id
 
 . at 773-74,
 
 120 S.Ct. 1858
 
 (collecting authorities). For those reasons, suits under both the False Claims Act and the MSP Act alike fall within the "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."
 
 Steel Co. v. Citizens for a Better Env't
 
 ,
 
 523 U.S. 83
 
 , 102,
 
 118 S.Ct. 1003
 
 ,
 
 140 L.Ed.2d 210
 
 (1998).
 

 The dissent contends that in the MSP Act, Congress did not intend to partially assign its damages even to Medicare beneficiaries. To whom, then, did it intend to partially assign its undisputed interest? To this the dissent essentially answers: to no one. But this declares that Congress indulged in a patently meaningless act-i.e., of passing a provision with no practical effect, just for the heck of it. Just as courts should not use their Article III powers to draft an advisory opinion, we should not rush to impute to Congress the drafting of a purely advisory provision.
 

 While the MSP Act may lack the long history the Supreme Court relied on in the qui tam context,
 
 see
 

 Stevens
 
 ,
 
 529 U.S. at 774
 
 ,
 
 120 S.Ct. 1858
 
 , other reasons also support standing here. Netro represents a Medicare beneficiary. She is the person closest to the event that made GBMC responsible for reimbursing Medicare. In order to control costs, Medicare provided such individuals with an incentive to help the agency recover funds. In cases such as this, Medicare will often not even know that it could recover money. Netro and other similarly situated plaintiffs are therefore often in a better position to recover on behalf of Medicare than the government itself.
 

 Six circuits have found that not all private individuals have standing to bring suit under the MSP Act because it is not formally a qui tam statute.
 
 See
 

 In re Avandia Marketing, Sales Practices & Products Liability Litig.
 
 ,
 
 685 F.3d 353
 
 (3d Cir. 2012) ;
 
 Woods v. Empire Health Choice, Inc.
 
 ,
 
 574 F.3d 92
 
 (2d Cir. 2009) ;
 
 Stalley ex rel. United States v. Orlando Regional Healthcare Sys., Inc.
 
 ,
 
 524 F.3d 1229
 
 (11th Cir. 2008) ;
 
 Stalley v. Methodist Healthcare
 
 ,
 
 517 F.3d 911
 
 (6th Cir. 2008) ;
 
 Stalley v. Catholic Health Initiatives
 
 ,
 
 509 F.3d 517
 
 (8th Cir. 2007) ;
 
 United Seniors Ass'n v. Philip Morris USA
 
 ,
 
 500 F.3d 19
 
 (1st Cir. 2007). We agree. The dissent contends that the above circuits held that there was no intent on Congress's part to assign Medicare damages claims to private plaintiffs.
 
 See
 
 Dis. Op. at 529-30. This statement is incorrect. The dissent simply conflates the undisputed consensus that the MSP Act is not a formal qui tam provision with a wholly illusory consensus that the statute cannot effect any partial assignment. No such consensus exists.
 

 None of the above cases was brought by the Medicare beneficiary on whose behalf Medicare made conditional payments. In fact, those decisions often assume that a Medicare beneficiary would have standing.
 
 See, e.g.,
 

 Woods
 
 ,
 
 574 F.3d at 97
 
 (2d Cir. 2009) ("Woods's evidence, even if considered, can establish only that he has standing to pursue an action to recover the amounts he alleges to have been improperly paid by Medicare for medical care that he personally received."). That assumption aligns with the many circuits who have treated beneficiary standing as a given.
 

 See, e.g.
 
 ,
 
 Stalley
 
 ,
 
 509 F.3d at 527
 
 ("Congress contemplated that Medicare beneficiaries could recover double damages to vindicate their private rights when their primary payers fail to live up to their obligations, even if Medicare has made a conditional payment of the beneficiaries' expenses.");
 
 see also
 

 Manning v. Utilities Mut. Ins. Co.
 
 ,
 
 254 F.3d 387
 
 , 394 (2d Cir. 2001) ;
 
 Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund
 
 ,
 
 656 F.3d 277
 
 , 279 (6th Cir. 2011).
 

 The Supreme Court made clear in
 
 Spokeo
 
 that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue."
 
 136 S.Ct. at 1549
 
 . And properly so. But
 
 Spokeo
 
 concerned reputational harms untethered from any concrete injury, private or public. And critically,
 
 Spokeo
 
 did not involve the government recoupment interest present here. The dissent suggests that
 
 Spokeo
 
 effectively struck down all non-qui tam private enforcement provisions that involve a government recoupment interest. But the
 
 Spokeo
 
 decision never spoke in such broad and apocalyptic terms, and indeed remanded that case for a much more particularized inquiry.
 
 See
 

 Robins v. Spokeo, Inc.
 
 ,
 
 867 F.3d 1108
 
 (9th Cir. 2017) (holding on remand that plaintiff had standing), cert. denied, --- U.S. ----,
 
 138 S.Ct. 931
 
 ,
 
 200 L.Ed.2d 204
 
 (2018).
 

 Ours is a narrow holding. Not just anyone can wander in off the street and avail themselves of the MSP Act's private cause of action. Were we to hold, however, that Netro, as the representative of a Medicare beneficiary, lacked standing even under the circumstances here, it is not clear that any party besides the government could bring suit under the MSP Act. That would essentially render Congress's express provision of the private cause of action null and void. It could also throw into serious question any non qui tam private cost recoupment action authorized by Congress across the board. With all respect, our good friend in dissent fails to acknowledge the staggering reach of its position. We are reluctant to absolutely prohibit the government from assigning its interests outside the qui tam context, even to a narrow class of plaintiffs and in an area vital to congressional efforts at cost control. We decline to issue such a sweeping constitutional decision here.
 

 III.
 

 Having established that Netro had standing to bring this suit, we now consider the merits of her claim. Whether GBMC "failed" to pay is a simple matter of statutory construction.
 

 GBMC became responsible for conditional payments on the day the state court issued its final judgment. Under Maryland law, a properly revised final judgment effectively supersedes the prior judgment.
 
 See
 

 Yarema v. Exxon Corp.
 
 ,
 
 305 Md. 219
 
 ,
 
 503 A.2d 239
 
 , 250 (1986) ("[W]hen a motion under Rule 2-535(a) to revise a final judgment is filed within thirty days and the circuit court in fact revises the judgment, and there has been no intervening order of appeal, the prior judgment loses its finality and the revised judgment becomes the effective final judgment in the case."). Netro received the funds owed to Medicare 37 days after the revised final state court judgment. That delay hardly constitutes a "fail[ure]" to pay under the MSP Act.
 

 To fail is "[t]o be deficient or unsuccessful; to fall short of achieving something expected or hoped for."
 
 Black's Law Dictionary
 
 (10th ed. 2014). There cannot be a failure to pay when there has been payment. Netro would have us transform the
 statute to read "unreasonable delay." But this we cannot do. While there might at some point be a delay of such length that it would amount to a failure, that is not at all this case.
 

 Netro argues that the delay began in July 2016, when the state court entered its initial judgment. That argument misreads Maryland law, which says that in the case of a revised judgment, "the prior judgment loses its finality."
 
 See
 

 Yarema
 
 ,
 
 503 A.2d at 250
 
 . But even if we were to start the clock in July, it is not apparent that GBMC violated the MSP Act. Again, GBMC ultimately paid Netro, who was then obligated to pay Medicare. And much of the delay she complains about was due to the state court's consideration of the appropriate judgment amount, not any evasion by GBMC. To the contrary, during that period GBMC showed its intention to pay by asking for information it thought necessary to transfer funds to Bromwell's estate. This is hardly the kind of recalcitrance Congress had in mind when it created a private action for double damages.
 
 Cf.
 

 Humana Med. Plan
 
 ,
 
 832 F.3d 1229
 
 (outright refusal to reimburse payments made by Medicare Advantage Organization);
 
 Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. &Sw. Areas Health & Welfare Fund
 
 ,
 
 656 F.3d 277
 
 (6th Cir. 2011) (illegal termination of coverage after a patient was diagnosed with end-stage renal disease ).
 

 Finally, Netro asks us to adopt a 60-day rule that would leave any primary plan vulnerable to suit exactly 60 days after becoming responsible for reimbursing Medicare. We decline to do so. The statutory text does not support any specific deadline, nor does Netro's attenuated rationale-relying on a different statutory provision that authorizes Medicare to charge interest on conditional payments after 60 days.
 
 See
 
 42 U.S.C. § 1395y(b)(2)(B)(ii). And in any event, counting from the proper date of final judgment, GBMC's payment was well within Netro's proposed deadline.
 

 IV.
 

 For the foregoing reasons, the judgment of the district court is
 

 AFFIRMED
 
 .