[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12139

_____

D.C. Docket No. 1:17-cv-23749-PAS

MSP RECOVERY CLAIMS, SERIES LLC,

Plaintiff - Appellant,

versus

ACE AMERICAN INSURANCE COMPANY,

Defendant – Appellee.

_____

No. 18-12149

_____

D.C. Docket No. 1:17-cv-23841-PAS

1:17-cv-23841-PAS

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

Plaintiff - Appellant,

versus

AUTO-OWNERS INSURANCE COMPANY,
a foreign profit corporation,

Defendants - Appellees,

_____
_____

1:17-cv-24066-PAS

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

Plaintiff - Appellant,

versus

OWNERS INSURANCE COMPANY,
a foreign profit corporation,

Defendant - Appellee.

_____
_____

1:17-CV-24068-PAS

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

Plaintiff - Appellant,

versus

SOUTHERN-OWNERS INSURANCE COMPANY,
a foreign profit corporation,

Defendant - Appellee.

_____
_____

1:17-cv-24069-PAS

MSP RECOVERY CLAIMS, SERIES LLC,

a Delaware entity,

Plaintiff - Appellant,

versus

AUTO-OWNERS INSURANCE COMPANY,
a foreign profit corporation,

Defendant - Appellee.

_____

No. 18-13049
_____

D.C. Docket No. 1:17-cv-23628-KMW

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

Plaintiff - Appellant,

versus

TRAVELERS CASUALTY AND SURETY COMPANY,
a foreign profit corporation,

Defendant - Appellee.

_____

No. 18-13312
_____

D.C. Docket No. 1:17-cv-22539-KMW

MSPA CLAIMS 1, LLC,
a Florida profit corporation,

Plaintiff - Appellant,

3

versus

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
a Foreign profit corporation,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(September 4, 2020)

Before JORDAN, JILL PRYOR, and WALKER,* Circuit Judges.

WALKER, Circuit Judge:

MSP Recovery Claims, Series LLC (MSPRC), and MSPA Claims 1, LLC

(MSPA), collection agencies and Plaintiffs here, appeal from dismissals with

prejudice of their claims against ACE American Insurance Company, Auto-Owners

Insurance Company, Southern-Owners Insurance Company, Owners Insurance

Company, Travelers Casualty and Surety Company, and Liberty Mutual Fire

Insurance Company (collectively, Defendants).  Plaintiffs sought double damages

against Defendants under the Medicare Secondary Payer Act.  Plaintiffs alleged that

actors within the Medicare Advantage system, including Medicare Advantage

---

* The Honorable John M. Walker, Jr., Circuit Judge for the United States Court of Appeals for the
Second Circuit, sitting by designation.

4

Organizations (MAOs) and various "downstream actors" that contracted with MAOs, had assigned their Medicare Secondary Payer Act claims to Plaintiffs for collection. The district court dismissed Plaintiffs' cases, now consolidated on appeal, after finding that (1) some of Plaintiffs' alleged assignments, including those from MAOs, were invalid and (2) Plaintiffs' downstream-actor assignors fell outside the ambit of the Medicare Secondary Payer Act's private right of action and thus could not confer statutory standing on Plaintiffs through an assignment. On appeal, Plaintiffs primarily argue that their downstream-actor assignors could access the private right of action and had rights to assign under the Medicare Secondary Payer Act. MSPRC individually argues that the district court erred in dismissing its claims based on an alleged assignment from an MAO with prejudice because dismissals based on defects in an assignment are not decisions on the merits and must be entered without prejudice. And MSPA argues that all of its assignments were valid. We agree with Plaintiffs on all issues.

Accordingly, we VACATE the dismissals of Plaintiffs' claims based on assignments from downstream actors, REMAND those claims for further proceedings consistent with this opinion, and MODIFY the dismissals of MSPRC's claims based on its alleged assignment from an MAO to be without prejudice.

# I

Plaintiffs are collection agencies that specialize in recovering funds on behalf of various actors in the Medicare Advantage system. By way of background, the Medicare Advantage system is a public-private health insurance system that runs parallel to Medicare. The Medicare Advantage system allows Medicare beneficiaries to opt into private health insurance plans offered by Medicare Advantage Organizations (MAOs) that provide coverage in excess of the coverage provided by Medicare. To operate more nimbly and to better compete with Medicare, some MAOs contract with smaller organizations, like independent physician associations, that have closer connections to local healthcare providers. These smaller organizations, or "downstream" actors, are also a part of the Medicare Advantage system and are central to the present case.

Plaintiffs' primary tool for recovering funds is the Medicare Secondary Payer Act. Generally speaking, the Act established that Medicare—and, as an extension of Medicare, the Medicare Advantage system—should not bear the costs of medical procedures that are already covered by a "primary payer," or other insurer such as a provider of workers' compensation insurance or automobile insurance. (Plaintiffs allege that Defendants are all primary payers.) Under the Act, Medicare and MAOs still can, as a stopgap measure, make a "conditional payment" to cover their beneficiaries' medical bills when the primary payer "cannot reasonably be expected

to make payment with respect to such item or service promptly." 42 U.S.C. §§ 1395y(b)(2)(B)(i), 1395w-22(a)(4). If Medicare or an MAO has made a conditional payment, and the primary payer's "responsibility for such payment" has been "demonstrated," as by a judgment or settlement agreement, the primary payer is obligated to reimburse Medicare or the MAO within 60 days. 42 U.S.C. §§ 1395y(b)(2)(B)(ii), 1395w-22(a)(4). When a primary payer fails to do so, Medicare can seek "double damages," or twice the amount of the conditional payment, from the primary payer under the Medicare Secondary Payer Act's right of action for the government at 42 U.S.C. § 1395y(b)(2)(B)(iii). In *Humana Med. Plan v. Western Heritage Insurance Co.*, this circuit held that MAOs (and their assignees) likewise can seek double damages under 42 U.S.C. § 1395y(b)(3)(A), the Medicare Secondary Payer Act's private right of action. 832 F.3d 1229 (11th Cir. 2016). *Humana* and this circuit's other case law to date, however, are silent on whether downstream actors that contract with MAOs, and in effect make conditional payments pursuant to those contracts, can seek double damages under the Act's private right of action.

Here, Plaintiff MSPRC alleged that it held an assignment of Medicare Secondary Payer Act claims against several of the defendants from an MAO. And both Plaintiffs alleged that they held assignments of claims against others of the defendants from various contractors of MAOs. Plaintiffs alleged that these

7

downstream assignors had contracted with MAOs to fully cover beneficiaries' costs in exchange for a set capitation fee.  Pursuant to these contracts, Plaintiffs' downstream actors allegedly directly made conditional payments for MAOs or reimbursed MAOs for their conditional payments.

The following took place before the district court:

A. ACE Claims

As is relevant to this appeal, MSPRC presented two representative claims in its case for reimbursement against ACE American Insurance Company (ACE). These claims were for medical expenses that MSPRC alleged were directly charged to and paid by Hygea and Health Care Advisor Services, management services organizations that contract with MAOs to assist in providing healthcare and administrative services to beneficiaries.  MSPRC's third amended complaint alleged that these downstream actors, pursuant to their contracts with MAOs, "made conditional payments on behalf of [beneficiaries] to cover accident-related expenses" that should have been covered by ACE as the primary payer.  *ACE* D.E. 36 at 2.

The district court (Patricia A. Seitz, *J.*) dismissed MSPRC's claims against ACE after concluding that non-MAO downstream actors, like Hygea and Health Care Advisor Services, cannot access the Medicare Secondary Payer Act's private right of action that allows MAOs to seek double damages.  *MSP Recovery Claims,*

8

*Series LLC v. ACE Am. Ins. Co.*, No. 17-cv-23749, 2018 WL 1547600, at \*8 (S.D. Fla. Mar. 9, 2018). Having allowed MSPRC to amend its complaint numerous times, the district court entered its dismissal with prejudice.

### B. Auto-Owners Claims

MSPRC presented five representative claims for reimbursement in its case against Auto-Owners Insurance Company, Southern-Owners Insurance Company, and Owners Insurance Company (collectively, Auto-Owners). These claims were for medical expenses allegedly paid by Health First Administrative Plans, Inc. (HFAP) and Verimed IPA, LLC (Verimed).

MSPRC alleged that HFAP is an MAO, even though Health First Health Plans, Inc. (Health First), a related company that is not HFAP, contracted directly with Medicare to be a part of the Medicare Advantage system. In support of its allegation, MSPRC submitted an affidavit from Michael Keeler, the Chief Operating Officer of both HFAP and Health First. The Keeler affidavit explained that "HFAP had and continues to have authority to manage and act on behalf of Health First Health Plan, Inc. with respect to all financial assets, including the Assigned Claims." *Auto-Owners* D.E. 60-1 at 1. It further explained that "HFAP, on behalf of Health First Health Plans, Inc., entered into a Recovery Agreement . . . whereby HFAP assigned to MSP Recovery all right, title, interest in and ownership of the Assigned Claims." *Id.* The affidavit included an agreement between HFAP and Health First,

9

which shows that the two companies have the same parent company, that HFAP "shall act as the general, administrative and financial manager" of Health First, that HFAP shall engage in "oversight with respect to the management of the assets of" Health First, that HFAP has the authority to deposit Health First funds and make payments on behalf of Health First, and that HFAP shall provide Health First with "[c]onsultation and assistance with . . . legal affairs" and with "risk management and compliance" services, as reasonably required. *Id*. at 4–5.

Verimed is an independent physician association that serves as an intermediary between an MAO and medical service providers. MSPRC alleged that Verimed, under its contract with its MAO, "is required to completely pay for whatever accident-related medical expenses are incurred" by a beneficiary. *Auto-Owners* D.E. 48 at 11. As described, Verimed reimbursed its MAO for conditional payments. *Id*. at 22 ("[The MAO] paid $155.68 for the accident-related expenses and, pursuant to their arrangement, required Verimed to fully reimburse and pay for those medical expenses.").

The district court (Patricia A. Seitz, *J*.) dismissed MSPRC's claims against Auto-Owners after determining that HFAP was not an MAO, that MSPRC did not hold any assignments from an MAO, and that non-MAOs like HFAP and Verimed cannot access or assign a claim under the Medicare Secondary Payer Act's private right of action. *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, Nos.

10

17-cv-23841, 17-cv-24069, 17-cv-24066, & 17-cv-24068, 2018 WL 1953861, at *6 (S.D. Fla. Apr. 25, 2018).   Having allowed MSPRC to amend its complaint numerous times, the district court entered its dismissal with prejudice.

C. Travelers Claims

MSPRC did not present any representative claims in its case for reimbursement against Travelers Casualty and Surety Company (Travelers). Instead, it alleged that it "holds, and otherwise owns the rights and interests to, claims that have been processed for items and/or services pertaining to Medicare Beneficiaries for which the Defendant is the primary payer." *Travelers* D.E. 20 at 12.  MSPRC made this allegation on the basis that Travelers had "reported some or all of [its] cases to [an agency within the Department of Health and Human Services] admitting it has primary payer responsibility."  *Id*.  MSPRC asserted that, pursuant to the Health Insurance Portability and Accountability Act (HIPAA), the names of the beneficiaries and their corresponding MAOs could be provided to Travelers "upon execution of a qualified protective order."  *Id*. at 11 n.8.

MSPRC later indicated that its claims regarded medical expenses paid by HFAP, which it alleged was an MAO.  *See MSP Recovery Claims, Series LLC v. Travelers Cas. and Sur. Co.*, No. 17-23628, 2018 WL 3599360, at *3 (S.D. Fla. June 21, 2018).  MSPRC submitted the same Keeler affidavit that was submitted in the Auto-Owners case.   Citing the opinion dismissing MSPRC's claim against

11

Auto-Owners, the district court (Kathleen M. Williams, *J.*) found that HFAP was not an MAO, that MSPRC did not hold any assignments from an MAO, and that HFAP categorically could not access the Medicare Secondary Payer Act's private right of action. *Id*. at *4. Here, too, the district court dismissed MSPRC's claims against Travelers with prejudice.

D. Liberty Claims

As is relevant on appeal, MSPA presented two representative claims in its case against Liberty Mutual Fire Insurance Company (Liberty). These claims regarded medical expenses allegedly paid by Florida Healthcare Plus (FHCP) and the Interamerican Medical Center Group, LLC (IMC).

In its third amended complaint, MSPA alleged that FHCP "made conditional payments" that should have been reimbursed by Liberty. *Liberty* D.E. 49 at 5. MSPA dropped its allegation that FHCP was an MAO, instead arguing that, "[i]n addition to MAOs, first-tier and downstream entities also suffer damages." *Id*. at 21. On April 15, 2014, FHCP executed a contract with La Ley Recovery that conveyed to the latter FHCP's right "to recover costs already paid" for beneficiaries from the appropriate primary payers. *Liberty* D.E. 49-8 at 2. In exchange, La Ley Recovery would provide FHCP with 50% of the claims collected. The term of the contract was for one year, with an automatic renewal for an additional year. The contract empowered La Ley Recovery to "assign the Agreement in whole or in part

12

but the assignee must be approved by [FHCP]." *Id.* at 3. La Ley Recovery then assigned the rights it had acquired to MSPA. In its third amended complaint, MSPA alleged that FHCP approved the assignment. *Liberty* D.E. 49 at 11. On December 10, 2014, the Florida Department of Financial Services was appointed FHCP's receiver. As FHCP's receiver, the Department of Financial Services wrote to La Ley Recovery to cancel its contract and subsequently filed a petition to enjoin La Ley Recovery and MSPA from pursuing their recovery rights. After MSPA had filed the present litigation, however, the Department of Financial Services recognized the validity of FHCP's contract with La Ley Recovery pursuant to a settlement agreement.

MSPA also alleged that IMC, a management services organization, contracted with MAOs "to manage and provide healthcare services and absorb the risk of [financial] loss" for a defined population of beneficiaries. *Liberty* D.E. 58-2 at 3. IMC "irrevocably assign[ed] all of [its] rights" to seek double damages from primary payers to MSPRC, *Liberty* D.E. 49-14 at 9, which in turn assigned those rights to MSPA, *id.* at 2. In its third amended complaint, MSPA alleged that MSPRC's assignment to MSPA was "ministerial in nature" and thus did not require IMC's approval under the terms of IMC's contract with MSPRC, *id.* at 12, and that, in any event, IMC "consented to any subsequent assignment from [MSPRC] to any then-existing or future MSP Company, which include[d] MSPA," *Liberty* D.E. 49 at 14.

13

The district court (Kathleen M. Williams, *J.*) dismissed MSPA's claims. The district court determined that MSPA's claim derived from the FHCP assignment was legally deficient because the contract on which it was predicated was invalid at the time of filing, in the period between when the Department of Financial Services canceled FHCP's assignment to La Ley Recovery and when the Department concluded the settlement agreement. *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 322 F. Supp. 3d 1273, 1280–81 (S.D. Fla. 2018). The district court also found that the FHCP and IMC assignments were legally deficient because MSPA had failed to allege that FHCP and IMC consented to the assignments. *Id.* at 1280, 1282. Additionally, the district court concluded that, even if the assignments were valid, MSPA's non-MAO assignors were categorically unable to access the Medicare Secondary Payer Act's private right of action. *Id.* at 1283. Having allowed MSPA to amend its complaint numerous times, the district court entered its dismissal with prejudice.

\*\*\*

On appeal, we must address a series of issues raised by the following arguments: Plaintiffs argue (1) that the district court misapprehended the scope of the Medicare Secondary Payer Act's private right of action and therefore erroneously dismissed their claims on the basis that the assignments supporting those claims were not from MAOs but were from downstream actors. MSPRC

14

additionally argues (2) that the district court erred in ordering that the dismissals of its HFAP claims be with prejudice. And MSPA argues (3) that the district court erred in dismissing its claims after incorrectly concluding that the assignments to MSPA were invalid. In response, Defendants present (4) a bevy of alternative bases for affirmance, including that (a) Plaintiffs' contracts with the downstream actors were "mere contingency agreements" rather than assignments; (b) Plaintiffs failed to comply with their supposed pre-suit notice requirements; and (c) there were defects with MSPRC's chain of assignments. We consider each of these arguments in turn, reviewing the district court's dismissals *de novo* and accepting Plaintiffs' well-pled factual allegations as true. *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019).

## IIA

Because Plaintiffs' claims (setting aside the HFAP claims) involve assignments from non-MAOs in the Medicare Advantage system, they would be properly dismissed if such non-MAOs are categorically barred from seeking damages under the Medicare Secondary Payer Act. In dismissing each of Plaintiffs' claims, the district court so interpreted the Act, concluding that only MAOs, not downstream actors in the Medicare Advantage system, may access its private right of action at § 1395y(b)(3)(A). On appeal, Plaintiffs argue that the district court adopted a crabbed reading of § 1395y(b)(3)(A) and thus erred in dismissing their

15

claims on the basis that their assignors were non-MAOs.  We agree with Plaintiffs'

interpretation of § 1395y(b)(3)(A) and conclude that the district court erred by

narrowly construing this provision to categorically exclude claims by downstream

actors.

The language establishing the private right of action reads:

> There is established a private cause of action for damages
> (which shall be in an amount double the amount otherwise
> provided) in the case of a primary plan which fails to
> provide    for    primary    payment    (or    appropriate
> reimbursement) in accordance with paragraphs (1) and
> (2)(A).

42 U.S.C. § 1395y(b)(3)(A).  We have previously recognized that this is a "broadly

worded provision that enables a plaintiff to vindicate harm caused by a primary

plan's failure to meet its [Medicare Secondary Payer] primary payment or

reimbursement obligations."  *Humana*, 832 F.3d at 1238.  And courts have generally

understood the underlying objective of § 1395y(b)(3)(A) to be "help[ing] the

government recover conditional payments from insurers or other primary payers" or

otherwise reducing the healthcare costs borne by Medicare.  *Stalley v. Cath. Health

Initiatives*, 509 F.3d 517, 524 (8th Cir. 2007); *see also Manning v. Utils. Mut. Ins.

Co., Inc.*, 254 F.3d 387, 397 n.8 (2d Cir. 2001) ("[W]hen Senator David

Durenberger, Republican of Minnesota, introduced President Reagan's Medicare

proposals for 1986, which included adding a private right of action to enforce the

16

[Medicare Secondary Payer Act], it was introduced as the President's 'health care cost reduction proposals.'").

Consistent with the breadth of § 1395y(b)(3)(A)'s text and its cost-reduction and efficiency goals, this circuit and others have interpreted this section to allow recovery when the plaintiff has a connection to Medicare's unreimbursed conditional payment; such plaintiffs are presumed to be "in a better position," when incentivized with double damages, "to recover on behalf of Medicare than the government itself." *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 527 (4th Cir. 2018).  In *Catholic Health Initiatives*, the Eighth Circuit allowed Medicare beneficiaries to access § 1395y(b)(3)(A)'s private right of action, even when those beneficiaries' medical bills had already been paid by Medicare.  509 F.3d at 524–25.  The Eighth Circuit explained that affording beneficiaries access to the private right of action would incentivize them to seek damages and "pay back the government for its outlay," thus reducing the cost of Medicare.  *Id.* at 525.  We endorsed that holding in *Stalley ex rel. U.S. v. Orlando Regional Healthcare System*, 524 F.3d 1229, 1234 (11th Cir. 2008); *accord Netro*, 891 F.3d at 528.  And the Sixth Circuit, in *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mutual Automobile Insurance Co.*, interpreted § 1395y(b)(3)(A) to allow medical care providers who have already received conditional payments from Medicare to bring a claim for double damages against primary payers.  758 F.3d 787, 790 (6th Cir. 2014).  The Sixth Circuit

17

implied that providers would repay Medicare with the damages from the primary payer, thereby advancing Congress's intent to "curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system." *Id.* at 793. We endorsed that holding in *Humana*. 832 F.3d at 1234–35.

More recently, both the Third Circuit and this circuit interpreted § 1395y(b)(3)(A) to apply to MAOs in the Medicare Advantage system. They found that denying MAOs access to the private right of action would "hamstring" them by putting them at a "competitive disadvantage" relative to Medicare. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 364 (3d Cir. 2012); *Humana*, 832 F.3d at 1235–38. This would thwart congressional intent with respect to the Medicare Advantage system. In reaching their holdings, neither circuit concluded that access to § 1395y(b)(3)(A) was limited to MAOs or otherwise addressed downstream actors' access to the private right of action. To the contrary, and as we further explain below, the Third Circuit's reasoning and our reasoning in *Humana* fully support downstream actors having access.

The only limitation that circuit courts have placed on § 1395y(b)(3)(A)'s breadth is that it cannot be treated as a *qui tam* provision. In other words, a plaintiff with no connection to Medicare or the Medicare Advantage system lacks statutory standing to seek double damages from a primary payer. This circuit, like others, *see, e.g.*, *Catholic Health Initiatives*, 509 F.3d at 527; *Stalley v. Methodist Healthcare*,

18

517 F.3d 911, 919 (6th Cir. 2008), has foreclosed *qui tam* suits because plaintiffs with no connection to a conditional payment likely would not reimburse Medicare or an MAO and thus would not advance the Medicare Secondary Payer Act's aim of reducing costs for Medicare or the Medicare Advantage system. Distinguishing § 1395y(b)(3)(A) from the *qui tam* provision in the False Claims Act (FCA), we reasoned that "[t]he private plaintiff in an action under the [Medicare Secondary Payer Act] is entitled to the entire recovery if he or she is successful, unlike under the FCA, which apportions the recovery between the relator and the government." *Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d at 1234. We further explained that the Medicare Secondary Payer Act "provides to the government none of the procedural safeguards to manage or direct an action which are granted to it under the FCA." *Id.*

The central issue in our case is whether actors downstream from MAOs, who directly make conditional payments or fully reimburse MAOs for their conditional payments, may themselves seek double damages from primary payers under § 1395y(b)(3)(A). In the wake of *Humana*'s holding that § 1395y(b)(3)(A) is a tool not only for preserving the solvency of the Medicare Trust Funds but also for reducing costs in the Medicare Advantage system, we believe this to be a straightforward inquiry.

19

The language of § 1395y(b)(3)(A), which has been interpreted to apply to plaintiffs with a connection to a conditional payment, is easily read to cover downstream actors who have borne the cost of a conditional payment and thus have suffered damages. Furthermore, allowing downstream actors who have directly paid beneficiaries' medical bills or reimbursed an MAO to recoup damages would plainly benefit the Medicare Advantage system. It would enable downstream actors to avoid costs that, under the Medicare Secondary Payer Act, should be borne by primary payers, not actors within the Medicare Advantage system. This, in turn, would enable downstream actors to continue presenting attractive contracts to MAOs. Ultimately, these attractive contracts are what enable MAOs to compete with Medicare. Rejecting downstream actors' access to § 1395y(b)(3)(A)'s private right of action would jeopardize MAOs' ability to negotiate favorable contract terms and would pass primary payers' statutorily-established risks and costs into the Medicare Advantage system. Finally, rejecting downstream actors' ability to seek double damages would incentivize primary payers to delay making primary payments and reimbursing conditional payments, in the hope that these costs would be permanently passed from an MAO to a downstream actor with no recourse. Both the text and the objective of § 1395y(b)(3)(A) support allowing downstream actors to bring suit, or assign their right to bring suit, against primary payers.

20

The Department of Health and Human Services's interpretation of § 1395y(b)(3)(A) further supports allowing downstream actors like Plaintiffs' alleged assignors to bring suit, or assign their right to bring suit, against primary payers. At our request, the Department of Health and Human Services (HHS), which administers Medicare, oversees the Medicare Advantage system, and promulgates regulations regarding the Medicare Secondary Payer Act, submitted an *amicus* brief (to which all parties were given an opportunity to respond) on the scope of § 1395y(b)(3)(A). In its briefing, which considered the relevant cases, statutes, regulatory scheme, and legislative history, HHS urged that any downstream actor that has "actually suffered an injury because it provided or paid for care from its own coffers and was harmed by a primary plan's failure to provide reimbursement" should be able to access the private right of action. HHS *amicus* br. at 12. We afford HHS's well-reasoned and considered interpretation of § 1395y(b)(3)(A) *Skidmore* deference, under which "an agency's interpretation may merit some deference depending upon the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Buckner v. Fla. Habilitation Network, Inc.*, 489 F.3d 1151, 1155 (11th Cir. 2007) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1305 (11th Cir. 2008) (affording *Skidmore* deference to agency

21

*amicus* brief where "[t]he brief is thoroughly reasoned and demonstrates a high level of consideration given to the issue; the brief thoroughly and rationally analyzes the statute, the legislative history, and the policy implications of the statutory interpretation").

In response to Plaintiffs and HHS, Defendants advance two main arguments to counter the textual and purposive arguments in favor of affording MAOs access to § 1395y(b)(3)(A)'s private right of action. But neither of these arguments is persuasive. First, Defendants emphasize that § 1395y(b)(3)(A) is not a *qui tam* provision. Of course this is so, but it has little bearing on whether downstream actors that have suffered financial losses in the amount of their MAOs' unreimbursed conditional payments can bring suit. Such downstream actors cannot be equated to *qui tam* plaintiffs who sue on behalf of the government and have no personal financial losses.

Second, Defendants assert that downstream actors cannot suffer injuries under the Medicare Secondary Payer Act because they make conditional payments or reimburse MAOs' conditional payments pursuant to their contractual obligations, rather than "mak[ing] *statutory* conditional payments on behalf of Medicare or the MAO." Auto-Owners br. at 20 (emphasis added). Defendants reason that downstream actors "accepted [MAOs'] risk under private sub-contracts" and are trying to "push that risk on to insurers," who are primary payers. ACE br. at 35.

22

Defendants' argument is a sleight of hand; the primary payers already have that risk. The downstream actors' alleged injury—the payment of medical expenses that should have been covered by a primary payer—is precisely the kind of injury that the Medicare Secondary Payer Act was meant to remove from the Medicare and Medicare Advantage systems. Under the Act, the risk that Defendants assert downstream actors accept from MAOs is in fact borne by primary payers and covered by the insurance policies they issue, not by MAOs or any party with which they contract.

In an attempt to bolster their argument that downstream actors' status as contractors of MAOs precludes their access to § 1395y(b)(3)(A)'s private right of action, Defendants cite several cases in which various courts found that a plaintiff's contractual relationship was insufficient to sustain statutory standing. These cases bear no resemblance to this case. In *American Federation of Government Employees, Local 2119 v. Cohen*, the Seventh Circuit denied statutory standing to federal employees who challenged a procurement process based on how the resulting award would negatively affect their job security. The Seventh Circuit found that the employees' asserted injury fell within the province of their job contracts, not within that of the procurement statute, which was designed to ensure fair bid processes for potential government contractors. 171 F.3d 460, 472 (7th Cir. 1999). In *Benjamin v. Aroostook Medical Center*, the First Circuit denied statutory standing to patients

23

of a black doctor who alleged that a medical center's racial discrimination against the doctor had prevented them from contracting for and receiving their desired medical procedures. Although the doctor had statutory standing under the anti-discrimination statute, his patients, whose interest in contracting for and receiving medical treatment fell outside the ambit of the anti-discrimination statute, could not sue under the statute. 57 F.3d 101, 104 (1st Cir. 1995). In both cases, the plaintiffs' injury was far removed from the interests protected by the statute at issue. As we have discussed, when a downstream actor bears the cost of an MAO's conditional payments, that downstream actor suffers an injury squarely within the ambit of the Medicare Secondary Payer Act.

Defendants have presented no persuasive rationale for limiting downstream actors' access to § 1395y(b)(3)(A)'s private right of action. The *amici* writing in support of Defendants have similarly failed to persuade us that downstream actors that fully cover MAOs' conditional payments are situated differently from MAOs in any material way. Therefore, and in light of the text, purpose, and persuasive agency interpretation of § 1395y(b)(3)(A), we hold that downstream actors that have made conditional payments in an MAO's stead or that have reimbursed an MAO for its conditional payment can bring suit for double damages against the primary payer. The district court erred in dismissing Plaintiffs' claims on the theory that, as a

threshold matter, non-MAOs are categorically barred from accessing the Medicare Secondary Payer Act's private right of action no matter the circumstances.

## IIB

MSPRC also appeals the district court's dismissals of its HFAP claims, insofar as those dismissals were entered with prejudice. MSPRC br. at 27. The district court dismissed with prejudice MSPRC's HFAP claims against Auto-Owners and Travelers on the basis that HFAP lacked an assignment from Health First—a recognized MAO that is tightly bound up and shares corporate executives with HFAP. Explaining that "HFAP is not an MAO" and has "not been assigned any rights by Health First Health Plans, Inc.," the district court held that HFAP, and therefore its assignee MSPRC, "lacks standing under § 1395y(b)(3)(A)." *Auto-Owners Ins. Co.*, 2018 WL 1953861, at *5. MSPRC argues that dismissals based on a party's lack of an assignment are dismissals for want of Article III standing, not statutory standing, and that dismissal with prejudice was therefore inappropriate. We agree with MSPRC.

As the Seventh Circuit explained in *MAO-MSO Recovery II v. State Farm Mutual Automobile Insurance Co.*, a case analogous to this one, if an assignment from HFAP "conveyed nothing" from Health First, "plaintiffs had no rights to enforce" at all. 935 F.3d 573, 581 (7th Cir. 2019). If MSPRC had no rights to enforce because the HFAP assignment conveyed nothing, MSPRC had no injury in

25

fact and thus no Article III standing. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (treating the presence or absence of a valid assignment as an issue of Article III standing). In the absence of Article III standing, the district court lacked jurisdiction to resolve MSPRC's claims on the merits. *See MAO-MSO Recovery II*, 935 F.3d at 581. The district court therefore could not have dismissed MSPRC's claims with prejudice. *See id.*; *see also MSP Recovery Claims, Series LLC v. QBE Holdings*, 965 F.3d 1210 (11th Cir. 2020) (vacating district court order dismissing similar claim with prejudice and directing that the dismissal be entered without prejudice).

Auto-Owners and Travelers contend that, even if the district court lacked jurisdiction to resolve MSPRC's case on the merits, the district court still had the authority to dismiss MSPRC's claims with prejudice because such claims were frivolous and made in bad faith. In support of this contention, Auto-Owners and Travelers marshal a plethora of unpublished, non-precedential Eleventh Circuit cases affirming, as an example, a district court's dismissal with prejudice of a complaint that alleged "wild accusations and incredible stories" after the district court "conclud[ed] that it did not have subject matter jurisdiction." *Gibbs v. United States*, 517 F. App'x 664, 667, 670 (11th Cir. 2013). We need not consider whether this practice set forth in unpublished opinions is consistent with district courts' lack

26

of jurisdiction because we conclude, like the Seventh Circuit, that MSPRC did not bring frivolous or bad-faith claims.

As the Seventh Circuit noted in *MAO-MSO Recovery II*, the "corporate arrangement [between HFAP and Health First] was not just complex, but . . . freighted with overlapping names and functions." 935 F.3d at 585. In support of its claims here, MSPRC submitted a contract between HFAP and Health First showing that HFAP "manage[d]" the MAO's general, administrative, and financial affairs. The same contract shows that HFAP was tasked, in particular, with handling the MAO's "legal affairs." Michael Keeler, the Chief Operating Officer of both HFAP and Health First, signed the assignment between HFAP and MSPRC and stated in an affidavit that he intended for "HFAP, on behalf of Health First Health Plans, Inc., . . . [to] assign[] to MSP Recovery all right, title, interest in and ownership of" any claims against primary payers. *Auto-Owners* D.E. 60-1 at 1. As MSPRC argues on appeal, it was eminently reasonable for MSPRC to plead that it had a valid assignment of claims from an MAO. Moreover, if MSPRC in fact had a defective assignment, MSPRC was well positioned to cure the technical defect and refile its case with the same claims. Like the Seventh Circuit, because we find that the district court erred insofar as it dismissed MSPRC's HFAP claims with prejudice, we order that the district court's dismissal be without prejudice.

27

**III**

In addition to dismissing MSPA's claims because MSPA's assignors were non-MAOs, the district court dismissed the claims after finding that MSPA's assignments were invalid. Specifically, the district court found that (1) FHCP's assignment was canceled when FHCP went into receivership and (2) MSPA failed to allege, with respect to both its FHCP and IMC claims, that FHCP and IMC approved the assignment of their rights to MSPA. On appeal, MSPA argues that the district court erred because (1) the purported cancellation of FHCP's assignment did not extinguish MSPA's vested rights and (2) MSPA's third amended complaint did in fact allege that FHCP and IMC had approved the assignment of their rights to MSPA. We agree with MSPA.

With respect to the purported cancellation of FHCP's assignment, FHCP executed a contract "assign[ing] all of [its] rights" under the Medicare Secondary Payer Act to La Ley Recovery on April 15, 2014. *Liberty* D.E. 49-8 at 2. Because nothing in this contract suggested that FHCP would retain an interest in its rights with respect to these claims that were assigned under the contract or that its rights with respect to these claims would revert to FHCP, the contract fully divested FHCP of such rights. On February 20, 2015, La Ley Recovery executed a contract "irrevocably assign[ing]" to MSPA "any and all" of La Ley Recovery's "claims, rights and causes of action set forth" in its contract with FHCP. *Liberty* D.E. 49-9

28

at 1. This agreement transferred the claims under the Act that La Ley Recovery then possessed to MSPA. That FHCP went into receivership after concluding its contract with La Ley Recovery, and that FHCP's receiver sought to cancel the contract, had no effect on the chain of assignments. FHCP's receiver had no authority to claw back what FHCP had already irrevocably transferred. *See State of Florida, ex rel. Dep't of Fin. Servs. v. Florida Healthcare Plus, Inc.*, No. 2014-CA-2762, Order Dated Dec. 10, 2014, at 13 (Fla. 2d Cir. Ct. 2014) (giving FHCP's receiver the authority to "cancel[]," but not rescind, contracts); Samuel Williston & Richard A. Lord, *Williston on Contracts* § 49:129 (4th ed. 1990) ("A rescission avoids the contract *ab initio*, while cancellation merely terminates the policy prospectively, as of the time the cancellation became effective."). At most, FHCP's receiver could prevent La Ley Recovery, and subsequently MSPA, from acquiring new rights that FHCP acquired after the date of the purported cancellation.

The district court's finding that MSPA failed to allege that it had received consent from FHCP and IMC for its assignments is belied by the record. MSPA's third amended complaint plainly alleged that FHCP had approved La Ley Recovery's assignment to MSPA. *Liberty* D.E. 49 at 11. The complaint also plainly alleged that IMC had "accepted, acknowledged, approved, and consented to" MSPRC's assignment to MSPA. *Id.* at 14. Moreover, MSPA submitted an affidavit from a manager of IMC stating that "IMC was aware of the subsequent assignment

29

from [MSPRC] to MSPA" and that "[n]o prior written consent was needed to effectuate that subsequent assignment because it was ministerial in nature" under the terms of IMC's contract with MSPRC. *Liberty* D.E. 58-2 at 3. Accordingly, we find that the district court erred in dismissing MSPA's FHCP and IMC claims based on the purported cancellation and validity of MSPA's assignments.

## IV

Defendants advance several alternative bases for affirmance. Across claims, Defendants argue that (1) Plaintiffs' contracts are "mere contingency agreements" rather than assignments; (2) Plaintiffs failed to comply with their supposed pre-suit notice requirements; and (3) there exist potential defects with MSPRC's chain of assignments. These arguments are without merit.

With respect to their first argument, Defendants, despite claiming to do so, *see, e.g.*, Liberty br. at 29–30, point to no cases in which a court characterized Plaintiffs' contracts as contingency arrangements or collection-only agreements rather than assignments. The one district court to consider this question was "not persuaded" that Plaintiffs' contracts were anything other than assignments. *MSP Recovery Claims, Series LLC v. Farmers Ins. Exchange*, Nos. 17-cv-02522 & 17-cv-02559, 2018 WL 5086623, at *12 (C.D. Cal. Aug. 13, 2018). Defendants contend that Plaintiffs must have contingency arrangements or collection-only agreements rather than assignments because their contracts grant the supposed assignors a

30

contingency interest, and because the clear purpose of the contracts is to provide the supposed assignors with recovered payments. But the Supreme Court has held that contracts that include recovery-sharing provisions, even if they require the assignee to "remit all litigation proceeds" to the assignor, are still properly construed as assignments. *Sprint Commc'ns*, 554 U.S. at 273–85 (outlining the history of "assignees for collection"). Defendants also argue that the fact that Plaintiffs' contracts have termination provisions cuts against the contracts being assignments. Although the termination provisions are curious in this context, given that an assignor's transferred rights would not revert after termination, this oddity alone does not override the plain text of Plaintiffs' contracts. Plaintiffs' contracts repeatedly refer to themselves as "Assignment[s] of Claims," *see, e.g.*, *Liberty* D.E. 49-9 at 2, and include language such as, "Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to [MSPRC], or its assigns, any and all of Client's . . . rights and entitlements . . . to pursue and/or recover monies" from primary payers, *see, e.g.*, *Ace* D.E. 28-1 at 2. We find this language dispositive of the fact that Plaintiffs hold assignments from various downstream actors.

With respect to their second argument, that Plaintiffs failed to comply with alleged pre-suit notice requirements, Defendants point to no law that obligated Plaintiffs to submit "recovery demand letters" or otherwise provide advance notice of their intent to bring a claim. The regulation that Defendants cite to support their

31

argument contemplates that primary payers' liability arises not only after the primary payer receives a recovery demand letter *but also* in cases in which "the demonstration of primary payer responsibilities is other than receipt of a recovery demand letter." 42 C.F.R. § 411.22. Although primary payers must have knowledge that they owed a primary payment before a party can claim double damages under the Medicare Secondary Payer Act, *see Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309 (11th Cir. 2006); *see also* 42 C.F.R. § 411.24(i)(2), Plaintiffs plausibly alleged that Defendants had such knowledge.

Plaintiffs alleged that they chose which claims to bring by comparing their assignors' claims data against two sets of documents: Defendants' filings with HHS under 42 U.S.C. § 1395y(b)(7)–(9), which obligates insurers like Defendants to report the claims for which they are primary payers, and certain of Defendants' settlement agreements to which MSPRC had access. The filings with HHS evidence Defendants' knowledge that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement. For the remaining claims, Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments. *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 903 (11th Cir. 2003) (finding that a complaint "sufficiently alleges constructive knowledge" on behalf of the primary payer based on the primary payer's entry into a settlement agreement with

32

beneficiaries).    Because Plaintiffs have plausibly alleged Defendants' actual or constructive knowledge, we decline to adopt Defendants' second alternative basis for affirmance.

Third and finally, Defendants argue that MSPRC "asserts defective (or incomplete) assignment chains" because its proffered contracts are between purported assignors and "series LLCs" that are affiliated with but are not themselves MSPRC.  ACE br. at 39–40.  Defendants liken MSPRC to a parent corporation with subsidiaries and note that parent corporations cannot sue on behalf of their subsidiaries.    But Delaware law, under which MSPRC is incorporated, uses permissive language that provides that "series *may* have"—but are not required to have—"separate rights, powers or duties with respect to specified property or obligations of [its affiliated] limited liability company."    6 Del. C. § 18-215 (emphasis added).    Depending on how MSPRC's relationships with its affiliated series LLCs are structured, MSPRC may have the same rights as or rights separate from the series LLCs with respect to the assignments.  Nothing in the record suggests that MSPRC's relationships with its series LLCs preclude MSPRC from asserting those series LLCs' rights.    At the pleading stage, we accept as true MSPRC's allegation that it has the right to bring claims under the proffered contracts.  As with the previous alternative bases for affirmance, we find this third basis meritless.

**V**

We have considered Defendants' remaining arguments for affirmance and find them to be without merit.  For the reasons stated above, in case numbers 18-12139 (ACE) and 18-13312 (Liberty), we **VACATE** the dismissals of Plaintiffs' claims based on assignments from downstream actors and **REMAND** those cases for further proceedings consistent with this opinion.  In case number 18-12149 (Auto-Owners), we **AFFIRM IN PART** the dismissal of the Plaintiffs' claims in this action to the extent that they involve claims for medical expenses allegedly paid by Health First Administrative Plans, Inc. (HFAP).  We **MODIFY** the dismissal of these claims to be without prejudice.  We **VACATE** the dismissal of the plaintiffs' remaining claims in case number 18-12149.  In case number 18-13049 (Travelers), we **AFFIRM** the dismissal of the Plaintiffs' claims but **MODIFY** the dismissal of these claims to be without prejudice.